# UNITED STATES v. DASHER.
## No. 1124.

District Court of Alaska.  Fourth Division.  Fairbanks.
Aug. 9, 1940.

720

Harry O. Arend, Asst. U. S. Atty, of Fairbanks, for plaintiff.

J. C. Winter, of Fairbanks, for defendant.

PRATT, District Judge.

The defendant, who was a dentist practicing in the Town of Fairbanks, Alaska, during the calendar year 1939 paid the $10 license fee required by Section 8, Chapter 39, Session Laws of Alaska 1929, as amended, the same being Section 1128, Compiled Laws of Alaska 1933.

The criminal information filed against him admits the above payment, but alleges that he did not, for the year 1939, pay the $10 license fee required by the general licensing act, to wit, Section 3138, C.L.A.1933.

To the information the defendant has filed a demurrer: (1) That the information does not state facts sufficient to constitute a crime; (2) that the license fee claimed to be due by the plaintiff is invalid as double taxation and is,

arbitrary and unreasonable and in violation of the Fourteenth Amendment of the Constitution of the United States.

Both of the laws above mentioned require an annual license fee, which is an excise tax. Binns v. United States, 194 U.S. 486, 24 S.Ct. 816, 48 L.Ed. 1087, 2 Alaska Fed. 291.

■ Although the Organic Act, 48 U.S.C.A. § 67 et seq., providing for a Legislature for the Territory of Alaska, requires that all taxes shall be uniform, that provision refers only to property taxes and does not refer to a license tax. Alaska Pacific Fisheries v. Territory of Alaska, 9 Cir., 236 F. 52, 4 Alaska Fed. 432.

■ License taxes need not be uniform. Alaska Fish Salting & By-Products Company v. Smith, 255 U.S. 44, 41 S.Ct. 219, 65 L.Ed. 489, 5 Alaska Fed. 20; 61 C.J., page 107; Douglas Aircraft Co., Inc. v. Johnson, State Treasurer, 13 Cal.2d 545, 90 P.2d 572; Golden Age Breweries, Inc. v. Henneford et al., 193 Wash. 536, 76 P.2d 598.

■ A double excise tax is not invalid for that reason in the absence of constitutional limitations to that effect. Golden Age Breweries, Inc. v. Henneford et al., supra; Douglas Aircraft Co., Inc. v. Johnson, supra; 37 C.J., page 211.

■ Consequently, the second ground of the demurrer is not well taken.

An examination of the situation with respect to the first ground of demurrer is essential.

In 37 C.J., page 211, the following rule is announced: "An occupation tax will ordinarily be presumed to be the only tax on such occupation; and, unless a different intent plainly appears, it will be held that an act or ordinance imposing occupation taxes or licenses was not intended to subject the same business to double taxation or license for the exercise of the same privilege."

■

In 61 C.J., page 139, Section 71, the following appears: "The presumption is against the intention of the legislature to impose double taxation on the same property, and prevails unless overcome by the express words of the statute. Any construction of a taxing statute which results in taxation of the same property twice is to be avoided if possible, and never to be adopted unless necessary to effect the manifest intent of the legislature; * * *."

To the same effect with reference to license taxes is Automobile Gasoline Co. v. City of St. Louis et al., 326 Mo. 435, 32 S.W.2d 281.

With the above rule in mind, an examination will be made of the acts of the Territorial Legislature on the subject. Prior to the meeting of the Legislature of Alaska in 1913, Congress, legislating direct for Alaska, made requirements for the admission of doctors and lawyers to the practicing of their profession in Alaska. Nothing, however, appeared with reference to dentists. The congressional acts also provided for annual occupational taxes upon various businesses. No occupational tax, however, was imposed upon attorneys, doctors, or dentists.

When the first Legislature met in 1913, it passed a very comprehensive act relative to the admission of persons to practice dentistry in Alaska. It created a Dental Board and made provision as to all dentists then practicing, or thereafter to practice, in Alaska. It required certain qualifications and registration with the Dental Board. This act was Chapter 84, S.L.A.1913. The title of the act was, "An Act to regulate the practice of dentistry in the Territory of Alaska and to provide for the examination, regulation, licensing and registration of persons engaged in the practice of dentistry, and for the punishment of offenders against this act." It provided for examinations of applicants for licenses in various designated subjects. A registration fee and examination fee were required to be paid to the treasurer of the Board of Dental Examiners, as well as an annual "license fee of four dollars ($4.00), such pay-

ment to be paid on or before the first day of July of each year." Section 10. The treasurer of the Board was required to give a bond to be approved by the Governor.

The Organic Act of Alaska, Section 464, C.L.A.1933, 48 U.S.C.A. § 24, prohibits the Legislature from repealing the congressional law relative to taxes on business and trade, but provides that, "This provision shall not operate to prevent the legislature from imposing other and additional taxes or licenses."

Pursuant to the above, the Legislature, in Chapter 52, S.L.A.1913, entitled, "An Act to establish a system of taxation, Create Revenue, and Provide for Collection Thereof for the Territory of Alaska, and for other Purposes," fixed certain occupational license taxes upon businesses. This did not include any tax upon dentistry.

When the second Alaska Legislature met in 1915, it amended the last-mentioned occupational tax act by Chapter 76, page 185, Session Laws of Alaska 1915, and included therein a $10 license tax upon "Attorneys at Law, Doctors and Dentists". Section 1. It did not purport to repeal any other act except said Chapter 52 as to which it stated it was both an amendment and repeal, except insofar as the same was re-enacted.

The general occupational tax acts from 1915 on continued to require an annual license tax from dentists, payable to the Treasurer of the Territory of Alaska. The last comprehensive act on the subject was Chapter 31, S.L.A.1921. Section 1 listed those who were subject to the tax and fixed the amount thereof. In Section 2 it provided for the payment of the tax to the Territorial Treasurer. Other sections made further provision for the enforcement of the act. Section 1 of the 1921 act was amended in details unimportant to this discussion in 1923, 1925, and 1927. Section 2 of the 1921 act has never been amended and constitutes Section 3140, C.L.A.1933.

Inasmuch as the general occupational tax act of 1915, Chapter 76, specifically levied an annual tax of $10 upon

dentists and provided for the payment of that sum to the Treasurer of the Territory of Alaska, who was to issue a license, it appears that this was a repeal of the portion of Chapter 84, S.L.A.1913, which required dentists to pay an annual license fee of $4 to the Treasurer of the Board of Dental Examiners, although there was no special mention of such repeal in the 1915 law or the various laws carrying forward the general occupational tax thereafter.

Chapter 39, S.L.A.1929, was entitled, "An Act To regulate the practice of dentistry in the Territory of Alaska and to provide for the examination, regulation, licensing and registration of persons engaged in the practice of dentistry and for the punishment of offenders against this Act, and repealing Chapter 84 Session Laws of Alaska 1913, relating to the same subject." Chapter 84, S.L.A.1913, was for the first time directly repealed. The title of said Chapter 39 is exactly the same as the title of said Chapter 84 down to the repealing clause. It is noted that both such acts specifically provided for licensing dentists.

Said Chapter 39, S.L.A.1929, is even more comprehensive than was Chapter 84, S.L.A.1913. In Section 8, it provided: "Each person applying to the Board for registration as a dentist shall pay to the Board the sum of Twenty-five ($25.00) Dollars, and every registered dentist shall each calendar year subsequent to the year in which he was registered pay to the Board a fee of Ten ($10.00) Dollars, which payment shall be so made before the first day of July of each year. In case of default of any such person his certificate of registration may be revoked by the Board upon ninety days notice from the Secretary of the Board. All the fees herein provided for shall be reported and transmitted to the Territorial Treasurer by the Board not later than ten days after the close of the calendar year in which they were received."

Section 13 provides:

"The name of any person registered as a dentist may be stricken from the roll of registered dentists and his certifi-

cate of registration may be canceled and his authority to practice dentistry revoked by the Board for any of the following causes:

"\* \* \*

"5. In event he shall fail to pay his annual license fee above provided for."

The only annual fee above provided for is the $10 fee required by Section 8, to be paid to the Board of Dental Examiners before the 1st day of July of each year. Chapter 39, S.L.A.1929, stands today as passed, with the exception that said Section 8 was amended by Chapter 100, S.L.A. 1933, to read as follows:

"Each person applying to the board for registration as a dentist shall pay the sum of Twenty-five Dollars and each registered dentist, on the first day of May of each year shall pay to the board a fee of Ten Dollars; if such payment is not made within thirty days after request for payment thereof has been made by the secretary of the board, in writing, the certificate of registration of such delinquent may be cancelled by the board.

"All fees collected under the provisions hereof shall be transmitted to the territorial treasury at the close of the calendar year."

It will be seen that for the purpose of this discussion, the amendment is not significant.

As the 1929 act and the 1933 amendment thereof are later than the general occupational tax law of 1921, as amended the last time in 1927, the 1929 act constitutes the latest word of the Legislature upon the subject of occupational taxes for dentists.

Plaintiff's assertion that two $10 license fees are required of dentists is not borne out by any clear wording of the Legislature. If the Legislature had intended that the act of 1929 should not completely regulate the practice of dentistry and provided for licensing of persons engaged in dentistry, the wording of the title to the act, as well as the wording

of subdivision 5 of Section 13, are entirely at variance with their intention.

Likewise, nothing appears in the law to indicate that the Legislature wanted to tax the dentists $20.

In State v. Enking, 59 Idaho 321, 82 P.2d 649, 657, the court said:

"Section 11 provides: 'That there is hereby levied and imposed until July 1, 1939, a tax of 1¢ on each 100 lb. unit or combination of packages making a 100 lb. unit of apples, prunes, potatoes and onions shipped from or within the State of Idaho.'

"And section 14 provides: 'That there is hereby levied and imposed until July 1, 1939, a tax of one cent per one hundred pounds on all fruits and vegetables covered by this act upon the producer of said fruits and vegetables to be collected by the dealer or handler thereof; and it is mandatory that said collection be made, said collection to be made and deducted from purchases of or proceeds received for fruits and vegetables bought from or handled for said grower in the regular channels of trade; and that said dealer be held responsible to said Idaho Fruit and Vegetable Advertising Commission for the collection and payment thereof.'

"It will be noted that section 11 makes each package of 'one hundred pounds' the unit; that it imposes a tax of one cent on that package unit, and that it does not impose any tax whatever upon shipments. And it will be further noted that each section, 11 and 14, contains a provision that the tax is to be 'levied and imposed until July 1, 1939', from which it is at once apparent that the Legislature intended to levy but one tax, which tax is to expire July 1, 1939. If, as argued by appellants, these sections levy two cents, of course then, each unit would necessarily be taxed two cents, instead of one, in which case it would not constitute a 'double' tax—it would only increase the tax from one cent per unit to two cents per unit. Had the Legislature intend-

ed to make a levy of two cents per unit, instead of one, it could have easily accomplished that by merely providing 'that there is hereby levied and imposed until July 1, 1939' a tax of two cents per unit on the fruits and vegetables mentioned in the statute. It is simply another instance of inadvertent repetition, surplusage, which could not have misled anyone."

In the occupational tax laws of 1917 to 1923, respectively, a license fee of $25 was assessed to dentists. In 1925 it was reduced again to $10 and so continued. If the Legislature had wanted to assess the dentists $20 for a license fee, or had intended to assess them $10 for a registration fee, in addition to a $10 license fee, it would have been very simple to have worded the law so as to obtain that effect.

It is true that the 1929 act expressly repeals only the 1913 act, but as the 1929 act is a very comprehensive act, regulating the practice of dentistry and licensing persons engaged in the practice, it would repeal by implication the portion of the general occupational tax act referring to dentists, it being a general occupational tax act and not specially dealing with the practice of dentistry and licensing of dentists.

In Automobile Gasoline Co. v. City of St. Louis et al., 326 Mo. 435, 32 S.W.2d 281, 283, the following was set forth:

An ordinance levied a tax on merchants generally of $1 on each thousand dollars of sales. A later ordinance, No. 30423, as to persons engaged in selling gasoline required them to obtain a license and pay the license tax of one-half cent per gallon for all gasoline sold and providing details for the collection thereof.

The court said:

"Ordinance No. 30423 * * * in our opinion provides otherwise as to persons within its purview. It deals with a special subject, viz. the sale and transportation of gasoline, or, it might be said, with persons engaged in that

business. We think it was not intended and should not be construed as levying the tax of one-half cent per gallon on sales of gasoline in addition to the $1 tax levied by section 411, supra, but that, on the contrary, it was intended to supersede the license tax provisions of section 411 as to persons coming within the operation of the later ordinance. * * *

"Ordinance No. 30423 does not in terms purport to repeal the license tax provision of the general ordinance above referred to, but neither does it contain any language indicating that the one-half cent per gallon tax is intended to be additional to the license tax levied by the general ordinance. We think, considering all of its provisions, it indicates a contrary intent. It requires payment of the tax quarterly and at times other than that provided in the general ordinance, requires a separate license, makes different provisions for collection, provides different penalties for violation, and is complete in itself without reference to the general ordinance. * * *

"Double taxation is not favored, and an intent to levy it should not be presumed. See State ex rel. v. Louisiana & Mo. R. R. Co. et al., 196 Mo. 523, 94 S.W. 279. That case dealt with property tax, but we think the principle is applicable generally.

"The gasoline tax ordinance is special, dealing with a particular class of merchants, and is later than the general ordinance and inconsistent with the license tax provisions of the latter, and therefore creates an exception to the general ordinance in that respect. 'Where there are two statutes and the provisions of one apply specially to a particular subject, which clearly includes the matter in question, and the other general in its terms, and such that, if standing alone, it would include the same matter, and thus conflict with each other, then the former act must be taken as constituting an exception, if not a repeal of the latter or general statute, and especially is this true where the special statute

was enacted subsequent to the passage of the general.'
* * * "

It should be borne in mind that the general occupational tax act requires the tax upon dentists to be paid to the Treasurer of the Territory of Alaska, whereas the dentistry act of 1929, as well as of 1913, requires the tax to be paid to the Dental Board. By the payment to the Dental Board, it is in a position to know whether or not a dentist is subject to have his name stricken from the roll of registered dentists for nonpayment of his annual license fee according to Section 13 of that act.

That there are two $10 annual license taxes required of dentists does not appear from the clear wording of the statutes and will not be presumed.

In Dallas Consol. Electric St. Ry. Co. v. State et al., 102 Tex. 570, 120 S.W. 997, the court said: "We also agree that the ordinary implication arising from a statute which merely imposes an occupation tax is that it is to be the only tax upon the occupation, all that the state proposes to charge for the pursuit of it, and that we should naturally look for some expression of a different intent when it exists. * * * "

To hold that the $10 fee required by the 1929 act is merely a registration fee would mean to give no effect to the express wording of the title to the act, and no effect to Section 13, subdivision 5, mentioned above.

The interpretation which will give effect to all the words of the statute should be adopted, if possible.

Consequently, there was no law requiring the defendant to pay any other annual license fee than the one he had already paid to the Dental Board.

The information fails to state facts sufficient to constitute a crime, and the demurrer thereto is sustained.